# OFFICE OF
# THE ATTORNEY GENERAL
### AUSTIN, TEXAS

Gerald C. Mann
PRICE DANIEL
ATTORNEY GENERAL

Overruled by O-4587-a

Honorable O. P. Lockhart, Chairman
Board of Insurance Commissioners
Austin, Texas

Opinion No. O-4587

Dear Sir:

Re: Incorporation of title insurance companies under Article 1302a, as amended; powers and duties of the Board of Insurance Commissioners to prescribe rates and policy forms for title insurance risks outside of Texas; deposits and reserves required of such companies; their liability for franchise taxes; filing fees required; eligibility of property to be received in payment of capital stock and surplus.

We have your letter of recent date requesting the opinion of this department on the above subjects, which letter sets out eight separate questions. We also have your supplemental request making certain additions and explanations in connection with question 7 and adding a ninth question, which question No. 9 is divided into twelve subheads.

Your original opinion request reads in part as follows:

"This is the first title insurance company attempted to be formed under Article 1302a as amended (Acts 1929, 41st Leg., Reg. Sess. p. 77, Ch. 40 as amended by Acts 1931, 42nd Leg., Reg. Sess. Ch. 269 and by Acts 1933, 43rd Leg., Reg. Sess. p. 750, Ch. 222). For our guidance in the incorporation, licensing, examination and regulation of this company, as well as similar ones which may be incorporated in the future and companies which came under the new legislation above cited upon its enactment, we request your opinion upon the following points in connection with the construction of Article 1302a as it now stands: "

Your questions are hereinafter stated and answered individually.

Question No. 1 reads as follows:

Hon. O. B. Lockhart, page 2

"Does this Board have the legal power and
duty of prescribing policy forms for use in
writing title insurance outside the State of
Texas by companies operating under Article
1302a?"

We assume that your phrase "title insurance outside
the state" means title insurance contracts made outside the
state on property outside the state.

Sections Nos. 3, 4 and 5 of Article 1302a read as
follows:

"Sec. 3. Corporations so formed, as well
as foreign corporations and those created under
Subdivision 57, Article 1302, of the Revised Stat-
utes of 1925, or under Chapter 18, Title 78, Re-
vised Statutes of 1925, or any other law in so
far as the business of either may be a title in-
surance business, shall operate in Texas, under
the control and supervision and under such uni-
form rules and regulations as to forms of poli-
cies and underwriting contracts and premiums there-
for, as may be from time to time prescribed by the
Board of Insurance Commissioners of Texas, and
no Texas or foreign corporation, whether incor-
porated under this act or any other law of the
State of Texas, shall be permitted to issue any
title policy or mortgage certificate or under-
writing contract on Texas property other than
under this act and under such rules and regula-
tions. No policy of title insurance of guarantee
of any character on Texas titles shall be issued
or valid unless written by a corporation comply-
ing with all provisions of and authorized or
qualified under this act. Before any rate pro-
vided for herein shall be fixed or changed, rea-
sonable notice shall issue, and a hearing afford-
ed to the companies affected by this act. Every
company doing business under this act shall file
with the Board of Insurance Commissioners the
form of guarantee certificate, mortgage policy
or any policy of title insurance before the same
shall be issued, and the form must be approved
by the Board, and be uniform as to all companies.
Under no circumstances may any company use any
form until the same shall have been approved by
the Board.

"The Board of Insurance Commissioners shall
have the right and it shall be its duty to fix
and promulgate the rates to be charged by cor-
porations created or operating hereunder for
premiums on policies or certificates and under-
writing contracts. The rate fixed by the Board

Hon. O. P. Lockhart, page 3

shall be reasonable to the public and non-confis-
catory as to the company. For the purpose of
collecting data on which to determine the proper
rates to be fixed, the Board shall have the
right to require the companies operating in
Texas to submit such information in such form
as it may deem proper, all information as to
loss experience, expense of operation, and other
material matter for its consideration.

"Rates when once fixed shall not be changed
until after a public hearing shall be had by the
Board, after proper notice sent direct to all
companies interested in writing this business,
and after public notice in such manner as to
give fair publicity thereto for two weeks in ad-
vance. The Board must call such hearing to con-
sider rate changes at the request of a company
writing title insurance, or if the Board thinks
that a change in rates may be proper. Any com-
pany or other person interested, feeling injured
by any action of the Board with regard to rates,
shall have the right to file a suit in the Dis-
trict Court of Travis County, within thirty days
after the Board has made such order, to review
the action, in which suit the court may enter a
judgment correcting the Board's order and fix-
ing such rates as may be proper, or affirming
the action of the Board. Under no circumstances
shall any rate of premium be charged for poli-
cies or underwriting contracts different from
those fixed and promulgated by the Board, or
those fixed in a final judgment of the court
as herein provided.

"Sec. 4. Corporations organized under the
laws of any other State shall be permitted to
do business in this State on exactly the same
basis and subject to the same rules, regula-
tions and prices and supervision as fixed for
Texas corporations.

"Sec. 5. Any foreign or domestic corpora-
tion issuing any form of policy or underwrit-
ing contracts or charging any premium rates to
the public on either owners' or mortgagee's
certificates or underwriting contracts on Texas
properties other than forms and rates prescribed
by the Board of Insurance Commissioners, here-
under, shall forfeit its right to do business
in Texas; but this shall not be construed as
intended to require the charge made by one
title insurance company, qualified to do busi-
ness under this act and doing a general title
insurance business for the public in this State,

Hon. O. P. Lockhart, page 4

for reinsuring or underwriting all or any part
of the business of another such company, to be
the same as the charge to the public." (Emphasis ours)

In the case of New York Title & Mortgage Company v.
Tarver, 51 Fed. (2d) 584, a three judge Federal court in con-
struing Article 1302a held as follows:

"That said Title Insurance Act is held to
only relate to and affect form of policies and
premium rates of such insurance, etc, within
the state of Texas, the doing of business with-
in the state of Texas; not to be extra-terri-
torial in its effect, and same cannot affect the
form of policies in use by complainants in other
states than the state of Texas or rates of pre-
mium charges on policies written outside the
state of Texas not to be performed within this
state. The state of Texas has the power to say
what kind of title insurance business shall be
performed in the state of Texas. Bothwell et
al. v. Buckbee, Mears Co., 275 U. S. 2 74, 48 S.
Ct. 124, 72 L. Ed. 277."

This opinion was written on a motion for an inter-
locutory injunction, and the court's order was sustained by
the Supreme Court of the United States in a memorandum opin-
ion reported in 76 L. Ed. 922.

The last sentence in the first paragraph of Section
3 above emphasized if standing alone might be broad enough
to cover policy forms used outside of this State in connec-
tion with out of state property. But the statute should be
construed from its four corners. In the case of Commercial
Standard Insurance Company v. Board of Insurance Commission-
ers, 34 S. W. (2d) 343 (error refused), the court said:

"The Board can exercise only the authority
conferred upon it by law in clear and unmistak-
able terms and will not be deemed to be given
by implication nor can it be extended by infer-
ence but must be strictly construed."

Your question No. 1 is answered in the negative.

Your question No. 2 reads as follows:

"Does this Board have the legal power and
duty of prescribing premium rates at which com-
panies operating under article 1302a shall write
title insurance risks outside of Texas?"

We assume that your phrase "title insurance risks
outside of Texas" means title insurance contracts made out-
side the State on property outside of the State.

Hon. O. P. Lockhart, page 5

You will note that Section 5 of Article 1302a provides a penalty (forfeiture of right to do business in Texas) for any corporation charging rates other than those prescribed by the Board on policies on Texas property. It provides no penalty for charging rates not so approved on property outside of Texas. For this reason and for the reasons set out under question No. 1 your second question is answered in the negative.

Your question No. 3 with subdivision (c) thereof omitted reads as follows:

"With respect to the deposit of cash or securities, required by Section 6 of the Act, equal to one-fourth of the authorized capital of the corporation:  (a) Should this deposit be considered a part of, or required in addition to, the capital stock of the Company?  (b) In Section 6 the deposit is required to be kept 'with the State Treasury or such other depository as may be named by such corporation and approved by the Board of Insurance Commissioners', whereas in Section 2 as amended the companies are granted certain privileges with respect to investment of portions of their capital stock in abstract plants in excess of 50% of the capital stock, provided that they maintain 'with the Commissioner of Insurance' the maximum deposit of $100,000 in securities as provided in Section 6.  Will this apparent conflict be met by keeping the deposit under the joint control of the State Treasurer and of this Board?. . . (d) Can the securities in this deposit lawfully consist of real estate, or notes or other obligations secured by lien upon real estate, in Texas or other states where the company is admitted to operate, or both in Texas and other states?"

Subsection (c) of this question is not answered, since your supplemental letter directs that it be omitted.

Section 6 of Article 1302a reads as follows:

"All corporations, domestic and foreign, writing title or mortgagee policies or underwriting contracts must at all times have and keep on deposit with the State Treasury or such other depository as may be named by such corporation and approved by the Board of Insurance Commissioners, either cash or first mortgage notes or such other securities as are now admissible for investment by life insurance companies under the laws of this State, to an amount equal to one-fourth of the authorized capital of such corporation; provided, however, that such deposit shall in no event exceed the sum of $100,000.00."

Hon. O. P. Lockhart, page 6

Such section does not say that the deposit shall be made out of assets separate from and in addition to those assets used in payment of capital stock. You will notice that Section 10 requires the accumulation of certain reserves separately and apart from the capital of the company. That the Legislature failed to make such a requirement as to the deposit under Section 6 is significant.

Neither does Section 6 require specifically that the deposit be made out of capital assets. It merely measures the amount of the deposit by the amount of the authorized capital.

In answer to subdivision (a) of question No. 3 you are advised that the deposit may be made out of any assets available which otherwise meet the requirements of said Section 6 of Article 1302a.

In connection with subdivision (b) of question 3 we call your attention to the rule that separate provisions of a statute will not be construed as conflicting if such construction can be reasonably avoided.

We also call to your attention the fact that at the time of the amendment to Section 2 (Acts of 1933, 43rd Leg., p. 750) which refers to the Commissioner of Insurance there was no officer in Texas by that title. The statute referring to such office was repealed by the Acts of 1927, 40th Leg., p. 329, which created the Board of Insurance Commissioners. All powers, duties, and prerogatives of the Commissioner of Insurance had prior to 1933 been transferred to the Board of Insurance Commissioners by Article 4862a, Revised Civil Statutes. It seems reasonable therefore that the reference in Section 2 to the Commissioner of Insurance was intended to be to the Board of Insurance Commissioners. This fact, in connection with the reference to Section 6 of the Act, indicates that all such deposits should be kept as provided in said Section 6. We see no compelling reason for keeping the individual deposits in different manners. We see nothing to require that the deposits be kept under joint control of the State Treasurer and the Board. Subdivision (b) of question 3 is answered in the negative.

In subdivision (d) of question 3 the phrase "or other obligations" is too indefinite to form a basis upon which this office can formulate an opinion and this opinion will attempt to answer such question by disregarding such phrase and considering the question with such phrase omitted.

Section 6 of Article 1302a provides that the deposit shall be "either cash, or first mortgage notes or such other securities as are now admissible for investment by life insurance companies under the laws of this state."

The reference to securities which are admissible for investment by life insurance companies refers in our

Hon. O. P. Lockhart, page 7

opinion to Article 4725 of the Revised Civil Statutes which specifies the securities in which such companies may invest. Such statute begins as follows:

"A life insurance company organized under the laws of this state may invest in or loan upon the following securities and none others."

It is true that Article 4726 sets out certain conditions under which such companies may hold and convey real estate, but such articles does not refer to such real estate as an investment.

It is therefore our opinion that we must look to Article 4725 to determine the "other securities" referred to in Section 6 of Article 1302a.

Said Article 4725 authorizes the investment in first mortgage loans as follows:

"It may also make loans upon first liens on real estate the title to which is valid and the value of which is 40% more than the amount loaned thereon."

There are other requirements as to insurance on buildings constituting a part of the value of such real estate. There is no requirement that the security for such real estate loans be located in Texas.

While Article 4726 authorizes investment in real estate loans it does not authorize the purchase of real estate as an investment. In this connection you are referred to our opinion No. O-4556 addressed to you and holding that real estate is not a "security" within the meaninf of Article 4720.

In connection with subdivision (c) of question 3 you are advised that the deposit required in Section 6 of Article 1302a may lawfully consist of notes secured by first liens on real estate, and it is immaterial for the purpose of such deposit whether such real estate is located in Texas or in some other state in which the company is permitted to operate,

It is further our opinion that such deposit may not lawfully consist of the real estate itself regardless of the location of such real estate.

Your question No. 4 reads as follows:

"Is the 5% reserve of the gross premiums, prescribed in Section 10 of the Act, applicable to premiums upon business outside of Texas? And if so, and if you should hold that the companies may lawfully charge, or that this Board

Hon. O. P. Lockhart, page 8

may lawfully prescribe, premium rates for title insurance risk written on property outside of Texas different from premium rates so prescribed or charged in Texas, then is such 5% premium reserve on premiums from business outside of Texas to be computed upon the premiums actually charged and received upon such foreign business or upon the different rates as prescribed by this Commission and charged upon Texas business, whether higher or lower than the foreign rates?"

Said Section 10 of Article 1302a reads in part as follows:

"Every company doing a title insurance business under the provisions of this act shall set aside annually as a reserve 5% of its gross premiums so collected, before any dividends are paid, the totals of such reserve shall never be required to exceed a total reserve of $100,-000.00. . . ."

Such provision requires the accumulation of a fund for the protection of policyholders and should be construed so as to best accomplish that purpose. The latter part of Section 10 provides:

"Funds accumulated under this provision shall never be used for the payment of any obligation other than those connected with title insurance, and, in the event of the insolvency of a company, the fund hereby provided shall be used to protect title insurance policyholders even though there be no accrued title insurance claims and even though there be unpaid obligations of other sorts."

You will note that the latter quotation does not say that the funds shall be used to protect Texas title insurance policyholders, but merely says "title insurance policyholders." If the fund is for the protection of all policyholders it could conceivably be very inadequate for that purpose if the company did a large business outside of the State and the reserve was accumulated from Texas business only. The statute does not say that the reserve shall be set aside from premiums on Texas business only.

It is our opinion that the 5% reserve provided in said Section 10 of Article 1302a should be set aside from all premiums actually collected.

Your Question No. 5 reads as follows:

"Are companies operating under Article 1302a properly taxable under Article 7084 or

Hon. O. P. Lockhart, page 9

7064? It has been the construction of this Department so far that 1302a companies are all taxable under Article 7084 and that Chapter 18 casualty companies doing a title insurance business are taxable under Article 7064. Is this construction correct?"

Section 7 of Article 1302a, reads as follows:

"The general laws applicable to payment of filing fees and franchise taxes of corporations having a capital stock are hereby made applicable to corporations coming under the provisions of this act. Domestic corporations operating under this law shall not be required to pay premium taxes."

Article 7064 of the Revised Civil Statutes provides in part as follows:

"Every insurance corporation, Lloyd's, or reciprocals, and any other organization or concern transacting the business of fire, marine, marine inland, accident, credit, title, livestock, fidelity, guaranty, surety, casualty, or any other kind or character of insurance business other than the business of life insurance, and other than fraternal benefit associations, within this State at the time of filing its annual statement, shall report to the Board of Insurance Commissioners the gross amount of premiums received upon property located in this State or on risks located in this State during the premium taxes."

Article 7064 of the Revised Civil Statutes provides in part as follows:

"Every insurance corporation, Lloyd's, or reciprocals, and any other organization or concern transacting the business of fire, marine, marine inland, accident, credit, title, livestock, fidelity, guaranty, surety, casualty, or any other kind or character of insurance business other than the business of life insurance, and other than fraternal benefit associations, within this State at the time of filing its annual statement, shall report to the Board of Insurance Commissioners the gross amount of premiums received upon property located in this State or on risks located in this State during the preceding year, and each of such insurance carriers shall pay an annual tax upon such gross premium receipts as follows: . . ."

Hon. O. P. Lockhart, page 10

You will note that this statute levies a tax on insurance carriers generally with certain exceptions which tax is based on gross premium receipts. We are of the opinion that the tax levied by Article 7064 is the premium tax referred to in Section 7 of Article 1302a and that domestic corporations operating under Article 1302a are not required to pay the tax levied by Article 7064.

It is true that Article 7064 has been re-enacted with certain amendments since the passage of Article 1302a, but in our opinion such action did not affect the special provision of Section 7 of Article 1302a regarding payment of premium taxes. In this connection it is significant that at the time of the original enactment of Article 1302a (effective date, February 29, 1929) including said Section 7, the premium tax statute then in force, (Acts 1911; 32nd Leg., ch. 108, H. B. 292) provided for such a tax on insurance companies doing a title insurance business.

It is further our opinion, and you are so advised that in accordance with Section 7 of Article 1302a, all corporations coming under the provisions of Article 1302a are taxable under Article 7084 which provides for general franchise taxes on corporations.

Are Chapter 18 casualty companies doing a title insurance business taxable under Article 7064? The answer to such question depends upon whether or not such companies are "operating under" Article 1302a so as to be exempted from the premium taxes by the terms of said Section 7.

It is true that such casualty companies operate under the supervision of the Board of Insurance Commissioners as provided in Article 1302a so far as the rates and policy forms used in their title insurance business is concerned. But under the provisions of Article 4989 the issuance of title insurance is only one of the numerous purposes for which such companies may be incorporated. Such casualty companies are subject to the numerous statutory provisions of Chapter 18 of the Revised Civil Statutes entitled "General Casualty Companies" and therefore operate under Article 1302a only to a limited extent.

It is our opinion and you are so advised that Section 7 of Article 1302a does not exempt general casualty companies organized under the provisions of said Chapter 18 from the taxes imposed by Article 7064 even though such companies are authorized to write title insurance as well as general casualty insurance.

Your question No. 6 reads as follows:

"Section 7 of Article 1302a refers to and adopts the 'general laws applicable to payment

of filing fees and franchise taxes of corporations having a capital stock.' This is the provision on which we base our conclusion, embodied in question 5 above, that the franchise taxes are to be applied as provided by Article 7084 rather than 7064. Insofar as filing fees are concerned, however, does this provision refer to and adopt Article 3914 or does it adopt Article 3920 as applicable to these companies?"

Article 3914 of the Revised Civil Statutes sets out certain fees which the Secretary of State is authorized and required to charge, among which is the following:

"Upon filing each charter, amendment or supplement thereto, of a private corporation created for any purpose intended for mutual profit or benefit, a filing fee of Fifty ($50.00) Dollars, provided that if the authorized capital stock of said corporation shall exceed Ten Thousand ($10,000.00) Dollars it shall be required to pay an additional fee of Ten ($10.00) Dollars for each additional Ten Thousand ($10,000.00) Dollars of its capital stock or fractional part thereof after the first."

Article 3920 of the Revised Civil Statutes sets out certain fees to be charged and received by the Board of Insurance Commissioners which fees include the following:

"For filing each declaration or certified copy of the charter of an insurance company - $25.00."

Both of the above quoted provisions were in effect when Article 1302a became effective.

Section 7 of Article 1302a is set out in the answer to your question No. 5. Section 8 of such article reads as follows:

The charter of corporations incorporated hereunder, and the amendments thereto, shall be filed with the Board of Insurance Commissioners, which said Board shall collect from the said companies filing fees and franchise taxes required by law."

It is clear that the filing fees, by whatever statute determined, are to be collected by the Board of Insurance Commissioners. On first consideration it would seem logical that the fees to be collected by the Board should be determined by Article 3920 which enumerates and sets out the fees to be collected by such Board. It is also true that our Supreme Court in the case of Daniel v. Tyrrel & Garth Investment Company, 93 S. W. (2d) 372, expressly said:

Hon. O. P. Lockhart, page 12

"Title insurance is a kind or type of insurance."

But we are faced with Section 7 which specifies:

"General laws applicable to filing fees and franchise taxes of corporations having a capital stock."

Article 3914 above quoted sets out the filing fees for corporations generally. Certainly Article 3920, so far as the filing fees of corporations are concerned, is not so general as Article 3914, because Article 3920 fixes the filing fees of insurance companies and no other kind of corporations. The Legislature has thus manifested its intention that the companies incorporated under Article 1302a shall pay the larger filing fees fixed by Article 3914. The reason for such intention is apparent from the nature of companies incorporated under Article 1302a. Such corporations may be created for a number of purposes in addition to the insuring of titles. They may engage in an abstract business, accumulate and lend money, and act as a trustee. The specific purposes for which they may be incorporated are set out in Section 1 of Article 1302a. Since such corporations may be incorporated for such purposes in addition to the issuance of title insurance, it is reasonable that they should be required to pay the larger filing fees required of corporations generally.

You are advised that the amount of the filing fees of companies incorporated under Article 1302a should be determined by the application of Article 3914 of the Revised Civil Statutes of Texas.

Your question No. 7 reads as follows:

"Since by the 1929 Act (Art. 1302a) these companies have been recognized as insurance companies and removed from control of the Secretary of State and put under the jurisdiction of this Board, is our construction correct that this makes the provisions of Article 4705 applicable as to requirements for eligibility of securities in which the capital stock of 1302a companies may be invested?"

We also set out herein the portion of your supplemental request which deals with question No. 7. Such portion is as follows:

"In connection with question No. 7, the attorney for the Company earnestly contends that because of 'the peculiar wording of Sections 6, 7, and 10 of Article 1302A, Article 4705 has no application' to and does not govern the eligibility of the types of securities in which this Com-

pany may invest or initially pay its capital
stock funds. He, therefore, takes the position
that all of the securities listed in the schedule
accompanying the affidavit of the incorporators
are eligible under Article 1302A and especially
Sections 6, 7, and 10 thereof. Article 4706
governs the investment of funds of stock insur-
ance companies other than life, health and acci-
dent companies, over and above their capital stock
funds; and, of course, whether Article 4706 is
applicable, to this Company will depend upon
whether Article 4705 is applicable to it. This
Department is going to require the Company to
pay in initially a surplus fund of at least
$5,000.00 (which will probably result in lower-
ing its capital stock to $100,000) "before in-
corporating and licensing it; and, therefore, we
will have directly involved also the question
of whether Article 4706 is applicable to such
surplus. We, therefore, desire to supplement
question No. 7 by inquiring whether 4706 is ap-
plicable as to this Company in the investment
of its surplus funds over and above its author-
ized capital stock fund."

As we understand your question No. 7 as supplement-
ed it may be re-stated as follows; Does Article 4705, Revised
Civil Statutes, govern the eligibility of property that may be
initially received in payment of the capital stock of this
corporation and does Article 4706, Revised Civil Statutes,
govern the eligibility of property in which its surplus funds
may be invested?

That title insurance is a type of insurance is no
longer an open question since the case of Daniel v. Tyrell &
Garth Investment Company, supra.

Article 4706 of the Revised Civil Statutes which
reads as follows:

"The capital stock of any such insurance com-
pany, except any writing Life, Health, and Acci-
dent Insurance, shall consist:

"1. In lawful money of the United States;
or

"2. In the bonds of this State or any county
or incorporated town or city thereof, or in the
stock of any national bank; or

"3. In first mortgages upon unincumbered
real estate in this State, the title to which is
valid, and the market value of which is not less
than forty (40) per cent more than the amount

loaned thereon. If any part of the value of such
real estate is in buildings, such buildings shall
be insured against loss by fire for not less than
sixty (60) per cent of the value thereof, with
loss clause payable to such company. Provided,
that the provisions of this Article, with res-
pect to the value of real estate, compared to
the amount loaned thereon, shall not apply to
loans secured by real estate which are insured
by the Federal Housing Administrator."

is found in Chapter 2 of Title 78 of the Revised Civil Stat-
utes. Chapter 2 is entitled "Incorporation of Insurance Com-
panies." The words "any such insurance company" contained in
Article 4705 refer back to corporations formed under Article
4699, Revised Civil Statutes, which is styled "Formation of
Companies" and to Article 4700 styled "Articles of Incorpora-
tion." Articles 4699 and 4705 are found, with the exception
of certain later amendments not pertinent here, in the Re-
vised Statutes of 1895 as Articles 3028 and 3034 under the
chapter also styled there "Incorporation of Insurance Com-
panies." In dusoussing Article 3028 of the Revised Statutes
of 1895 and the title on insurance therein contained our Sup-
reme Court in the case of State v. Burgess, 109 S. W. 922, said:

"We are thus lead to the conclusion that
Article 3028 in its origin was, as in its language
it is, a general provision applicable to all in-
surance corporations except such as may be exclud-
ed by Article 3996."

If Article 3028 (now Article 4699) is a general statute it
reasonably follows that Articles 4705 and 4706 in the same
title are statutes of a similar nature. From the above we
are lead to conclude that Article 4705 is intended as a gen-
eral statute governing the capital stock requirements of in-
surance corporations having a capital stock unless such cor-
porations are exempted from its requirements by its own terms
or the terms of some other Article.

The attorney for the incorporators seems to concede
that Article 4705 and Title 78, Chapter 2, are applicable to
insurance corporations generally but contends as follows:

"The Statutes applicable to the formation
of corporations generally (Section 57, Art.
1302, of the Revised Statutes) permitted the in-
corporation of guaranty title companies without
supervision of any kind or character insofar as
the Board of Insurance Commissioners was con-
cerned up until passage of Article 1302a in 1929.
Consequently, the general incorporation statutes,
including the statute governing the capital
stock requirements of all private corporations,
governed and controlled title guaranty companies

Hon. O. P. Lockhart, page 15

up until the time of the passage of Article 1302a. Article 1302a changed the application of the general incorporation statutes only in the particulars therein set out. We find no reference of any kind or character in Art. 1302a to Art. 4705 or any other article of Title 78, Chapter 2 applicable to insurance corporations generally."

One of the particulars in Article 1302a, Revised Civil Statutes, which changes the application of the general incorporation statutes is the provision in Section 23 that no further corporation shall be chartered under subdivision 57 of Article 1302 which is the general statute setting out the purposes for which private corporations may be chartered. Such provision seems to indicate the intention of not allowing the creation of title insurance companies under the general incorporation statutes. When the Legislature wished to make the general laws regarding filing fees applicable to title insurance corporations it did so by express provision. It is not unreasonable to presume that the Legislature, if it wished to make the general incorporation statutes, rather than the insurance incorporation statutes, applicable to an insurance corporation, it would have done so by express provision.

It is true that corporations formed under Article 1302a may have purposes other than the issuance of title insurance policies. The compiling and selling of abstracts of title is not insurance. Yet the Act clearly treats such corporations as insurance corporations. The words "insure" and "title insurance" are used repeatedly. The Board of Insurance Commissioners has large powers of regulation over such corporations. Their charters must be filed with the Board. Under certain conditions the Board may revoke such corporation's certificate of authority. The Act evidences a general intention to remove title insurance companies from the class of private corporations generally and place them in the class or status of insurance corporations.

The mere fact that Article 1302a appears in Vernon's Annotated Civil Statutes under the title on private corporations generally has no significance. The Act was passed since the revision of 1925 and the Act does not designate in what chapter of The Revised Civil Statutes it should be placed.

The application of Article 4705 and 4706 to title insurance companies will not nullify the provisions of Section 2 of Article 1302a which allows investment of a certain portion of the capital in an abstract plant or plants. Article 4705 merely prescribes the initial requirements of capital stock. It does not provide that the capital be constantly maintained in that condition. The terms of both Articles must give way when in conflict with the terms of Article 1302a which is the more recent and more particular statute.

Hon. O. P. Lockhart, page 16

In answer to question No. 7 it is the opinion of this department and you are so advised that Article 4705, Revised Civil Statutes, is applicable to determine the initial capital stock requirements of a title insurance corporation to be created under Article 1302a, Revised Civil Statutes, and that Article 4706, Revised Civil Statutes, governs the investment of its funds over and above its paid up capital stock, and it is further our opinion that such articles are applicable only insofar as they do not conflict with any provisions of Article 1302a, Revised Civil Statutes.

In accordance with the directions in your supplemental request, question No. 8 is omitted from this opinion.

Your question No. 9 contained in your supplemental letter consists of twelve subdivisions and such question, together with the explanation in connection therewith, reads as follows:

"In studying the schedule of assets accompanying the affidavit of the incorporators, which assets will be tendered in payment of capital stock and surplus (before actual filing, the charter will probably be rewritten so as to divide these assets up into a minimum of $100,000 capital stock and $5,000 surplus) we observe that the assets are affirmatively disclosed to embrace (a) fee titles to real estate, (b) real estate purchase contracts, and (c) notes or other monetary obligations secured by first lien upon real estate, some of all three of which are located in the State of New Mexico and some in the State of Texas. Of course, before either chartering or licensing this Company, this Department will discharge its responsibility of determining whether or not the assets so listed in the schedule to the affidavit are actually valid fee titles, real estate purchase contracts and obligations secured by first liens upon real estate, and the location thereof (whether in Texas or New Mexico) and the value thereof. But, for the purpose of determining the legal eligibility of the various classes of assets so tendered in payment of the authorized capital stock and the surplus funds which may be set up initially in incorporating this Company, we ask you to answer specifically the following questions in addition to those propounded heretofore, regardless of whether you hold Articles 4705 and 4706 applicable, or whether you hold Article 1302A or some other article or articles of the statutes applicable, with reference to the investment of the capital and surplus funds of this Company:

Hon. O. P. Lockhart, page 17

"A. Are fee titles to real estate situated in Texas eligible to be received in payment of the capital stock funds of this Company?

"B. Can fee titles to real estate outside of Texas be received in payment of capital stock of this Company?

"C. Can fee titles to real estate in Texas be accepted in payment of surplus funds of this Company?

"D. Can fee titles to real estate outside of Texas be accepted in payment of surplus of this Company?

"E. Can real estate purchase contracts upon real property in Texas be accepted in payment of capital stock of this Company?

"F. Can real estate purchase contracts upon real property situated outside of Texas be accepted in payment of capital stock of this Company?

"G. Can real estate purchase contracts upon property outside of Texas be accepted in payment of surplus of this Company?

"H. Can real estate purchase contracts upon real property outside of Texas be accepted in payment of surplus of this Company?

"I. Can notes or other monetary obligations secured by first liens upon real estate in Texas be received in payment of capital stock of this Company?

"J. Can notes or other obligations secured by first liens upon real estate situated outside of Texas be received in payment of capital stock of this Company?

"K. Can notes or other obligations secured by first liens upon real estate situated in Texas be received in payment of surplus of this Company?

"L. Can notes and other obligations secured by first liens upon real estate situated outside of Texas be received in payment of the surplus of this Company?"

We do not attempt to answer subdivisions E, F, G and H, since the term "real estate purchase contracts" does not give this department sufficient facts on which to base an opinion.

Hon. O. P. Lockhart, page 18

Also we will disregard the phrase "or other monetary obligations" contained in subdivisions I, J, K, and L, because such phrase is too indefinite to be the basis of an opinion.

Subdivisions A and B of question No. 9 are answered in the negative. See Article 4705, Revised Civil Statutes, heretofore quoted.

Subdivisions C and D of question No. 9 are not in our opinion answered by the terms of Article 4706, which reads in part as follows:

"No company, except any writing life, health, and accident insurance, organized under the provisions of this chapter shall invest its funds over and above its paid up capital stock in any other manner than as follows: . . ."

It is true that direct investment in real estate is not permitted by the terms of such article. But as we construe your letter and question the real estate in this case is to be conveyed to the company on incorporation as a gift or contribution. The acceptance of such contribution is not an investment within the meaning of Article 4706 which is a protective statute. Webster defines the word "invest" as follows:

"To lay out (money or capital) in business with the view of obtaining an income or profit."

Therefore our holding under question No. 7 does not mean that Article 4706 is decisive of the situation presented in subdivisions C and D of question 9. However, Article 4715 under the title on insurance provides that the laws governing corporations in general shall apply to and govern insurance corporations incorporated in this state insofar as the same are not inconsistent with such title. In this connection we direct your attention to Article 1360 which reads as follows:

"All private corporations authorized by the laws of Texas, to do business in this state, whose main purpose is not the acquisition or ownership of lands, which have or may acquire by lease, purchase or otherwise more land than is necessary to enable them to carry on their business, shall, within fifteen years from the date said land may be acquired, in good faith sell and convey in fee simple all lands so acquired which are not necessary for the transaction of their business."

And to Article 1364 which reads as follows:

"All corporations holding lands contrary to the provisions of this law shall hold the

Hon. O. P. Lockhart, page 19

same subject to forfeiture and escheat proceedings. The Attorney General, or any district or
county attorney, when either of them has reason
to believe that any corporation is holding lands
in violation of this law, shall institute suit
in the name of the State of Texas, in Travis
County, or in any county in Texas where such
corporation may have an agent, or in any county
where any part of the land may be situated,
against such corporation, as is provided for
the escheat of estates of deceased persons
dying without devise thereof and having no heirs."

In the case of Campbell v. Hood, 35 S. W. (2d) 93,
(Com. App.) Dec.) the court said:

"For many years it has been the established
policy of our state to prohibit corporations,
with certain exceptions, from acquiring land."

The court further said:

"It is true, as argued by the plaintiffs
in error, that if the corporation has consummated the deal by acquiring the lands no one could
have questioned its title except the state."

We can find no law requiring the refusal of a corporate charter because it is likely that such corporation
may acquire by contribution lands which it is not allowed to
hold, therefore the question involved in subdivisions C and
D as to the corporation's right or lack of right to receive
and hold such lands is now largely academic. It should be
determined when it actually arises by proper proceedings under the terms of Article 1364 above quoted.

Subdivision I of question No. 9 is answered in the
affirmative provided such first lien notes on Texas realty
meet the requirements of Article 4705, Revised Civil Statutes,
as to the value of the security, fire insurance, etc.

Subdivision J of question No. 9 is answered in the
negative because Article 4705, Revised Civil Statutes, specifies first mortgage notes on real estate in this State.

In answer to subdivisions K and L of question No. 9
you are advised that for the same reasons set out above in the
discussion of subdivisions C and D we do not pass upon the
corporation's right to receive by contributions and thereafter hold such first lien notes as a part of its surplus.
However, your attention is directed to Section (b) of Article
4706 authorizing investments of surplus funds as follows:

"In bonds or first liens on unincumbered
real estate in this State or in any other State,

Hon. O. P. Lockhart, page 20

> country, or province in which such company may
> be duly licensed to conduct an insurance business,
> and providing in each instance such real estate
> shall be worth at least forty (40) per cent more
> than the amount loaned thereon. The value of
> such real estate shall be determined by a valua-
> tion made under oath by two (2) freeholders of
> the county where the real estate is located, and
> if the buildings are considered a part of the
> value of the real estate, they must be insured
> against loss by fire for not less than sixty (60)
> per cent of the value thereof, with loss-payable
> clause to such company."

You are therefore advised that a title insurance com-
pany may invest its surplus funds in first lien notes on un-
incumbered real estate either in this State or any other state
in which it is duly licensed to conduct an insurance business
provided the other requirements of Article 4706 are satisfied.

Trusting this opinion will aid in the determina-
tion of the problems before you, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Donald Gay
Assistant

DG:db:jrb

APPROVED OCT. 16, 1942
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED OPINION COMMITTEE
BY BWB, Chairman